THIEBAND, Guardian, v. SEBASTIAN, Administrator.

A testator by his will, made at the city of *Paris, France,* after directing the payment of debts, funeral expenses and certain legacies, and bequeathing the annual income of the residue of his estate to his wife during her life, divided the estate, which was all personalty, into six parts, one of which he devised to his brother during his life, and upon his death, the same sixth part was to be divided equally between his children then born. The brother died before the testator, leaving three children. *Held,* that upon the death of the testator, the estate vested, *eo instanti,* in the children, though not to be distributed till the death of the testator's wife.

The legatee and his children were residents of this state at their several deaths. *Held,* that at the death of the legatee without a will, the estate passed to his heirs under the laws of this state,—the succession to personal property being governed by the law of the domicile of the intestate.

Where the Court authorized a deposition to be taken in *Switzerland,* and ordered it to be certified as depositions taken in this state are certified:—*Held,* that a certificate failing to show that the deponent was duly sworn—by whom the deposition was written—and whether or not the adverse party attended —was not sufficient.

By § 36, 2 R. S. p. 317, a foreign will, or a copy and probate thereof, cannot be used in evidence in the Courts of this state, unless it has been first produced to the Common Pleas, and by that Court directed to be filed and recorded.

APPEAL from the *Switzerland* Circuit Court.

DAVISON, J.—The material facts of this case are these:

*Daniel F. Courvoisier*, having made his will, died testate at *Paris*, in *France*, on the 15th of *June*, 1832. The city of *Paris* was his domicile. His will directs the payment of debts, funeral expenses, and certain legacies; bequeaths the annual income of the residue of all his effects to his wife, *Julia M. Courvoisier*, during her life; divides the estate, which was all personalty, into six parts; and then (so far as its provisions relate to questions arising in the record) proceeds as follows: "I give one-sixth part of my estate to my brother, *David L. Courvoisier*, during his life. After his death, it is my wish that the same sixth part of the residue of my estate may be divided in equal portions between all his children born at that date, whatever may be their number."

*David L. Courvoisier*, the legatee named in the will, at his death, which occurred before that of the testator, left three children, *Frederick, Lewis* and *Benoit. Frederick* is still living. *Lewis* died without wife or issue or their descendants. *Benoit* died in 1832 or 1833, leaving two children, viz., *Frederick Louis* and *Louisa Henrietta.* The latter was married first to one *O'Neal*, by whom she had one child, *Frederick B. O'Neal*, who is the ward of *Thieband*, the appellant. After *O'Neal's* death, *Louisa* married *Sebastian*, the appellee. The testator's wife died in the year 1848. And *Louisa* died in *March*, 1852, without issue by *Sebastian*, her second husband, but leaving *Frederick B. O'Neal*, her only child, then of the age of four years. "On the 20th of *March*, 1849, and before *Louisa's* death, one *Auguste Delachaux* was appointed by the justices of the peace in *Poutz, Switzerland*, attorney for *Benoit* and *Frederick Courvoisier*, and in that capacity received the distributive shares of each. It would seem that the death of *Benoit* was then unknown to the justices at *Poutz*. The amount received for *Benoit* was 2,300 dollars, one half of which was paid over by *Delachaux* to *Thieband*, as guardian of *Frederick B. O'Neal. David L. Courvoisier*, the father of *Benoit Courvoisier, Benoit* himself, and his daughter, *Louisa Henrietta*, the mother of *O'Neal*, were all, at their several deaths, domiciled in this state. The present

suit was instituted by *Sebastian*, as administrator of his deceased wife, to recover the money paid to *Thieband* as guardian, &c. There was a verdict for the plaintiff, upon which the Court, over a motion for a new trial, rendered judgment.

It is insisted that the right to the money in controversy is to be settled by the law of the domicile of the testator at the time of his death, and not by the statute law of *Indiana* regulating distribution, &c. This position seems to be incorrect. The words *his children*, as used in the will, simply comprehend the children of *David L. Courvoisier*, and not his grandchildren; hence, the will does not confer title on either party to this suit, because neither of them is designated as legatee. And the inquiry at once arises, whether the one-sixth of the estate bequeathed to *David L.* during his life, and after his death, to his children, vested in them upon the decease of the testator. If it did, then the estate, though situated in *France*, so far as it embraced the share of *Benoit Courvoisier*, passed, at his death, to his children, under the law of *Indiana;* because the succession to personal property is governed exclusively by the law of the actual domicile of the intestate. Story on Conflict, &c., § 481.

Did the estate, upon the testator's decease, vest in the children described in the will? *Rumsey* v. *Durham*, 5 Ind. R. 71 seems to be in point. There, a testator, by his will, gave to his wife as long as she should remain his widow, the use of all his real and personal property, for the support of herself and family. The will then proceeded as follows: " After the death or marriage of my wife, my will is that all my property, real as well as personal, shall be sold, and equally divided among my children. *Held*, 1. That the direction to sell was, in effect, a conversion of the land into personalty, and that, in equity, the land must be treated as money. 2. That the property vested in the children at the decease of the testator. This decision is fully sustained by principle and authority, and we are inclined to follow it. The result is that the will before us, at the testator's decease, *eo instanti*, gave the children of *David*

*L. Courvoisier* a vested estate, though it was not, until the decease of the widow, and his death, to be distributed among them.   4 Kent's Com. 291.—1 Jarm. on Wills, pp. 638, 639.

But on the trial of the cause, various questions relative to the admission of evidence were raised, which it becomes our duty to notice.

The Court, at a term prior to the one at which the cause was tried, made an order authorizing the plaintiff to take depositions in this action, on his behalf, at *Chaux de Fonds*, in the canton of *Neufchatel, Switzerland*, and requiring such depositions, when taken, to be certified as depositions taken in this state are certified.   The plaintiff, under the order, having taken the deposition of *Auguste Delachaux*, and the same being published, the defendant moved to suppress it upon the ground that it was not certified in accordance with the order of the Court; but his motion was overruled. The certificate appended to the deposition is as follows:

"I, *Isaac C. Ducommon*, justice of the peace, &c., do certify that the foregoing deposition of *Auguste Delachaux* was taken before me at the office of *Auguste Delachaux*, a notary public at *Chaux de Fonds*, in the canton of *Neufchatel, Switzerland*, on the 21st day of *August*, 1855, between the hours of 8 o'clock, A. M. and 5 o'clock, P. M., of said day.   Given under my hand and seal, this 21st of *August*, 1855.   *Isaac Charles Ducommon*, justice of the peace.   [SEAL]."

When depositions are taken in a foreign country, they must be certified in such manner as the Court shall direct. 2 R. S. p. 88, § 262.   Here, the Court directed that they should be certified as depositions taken in this state are certified.   In order, then, to test the validity of the certificate in question, we must refer to the rule of practice on that subject found in our code of procedure.   Section 257 of the above chapter requires the officer who takes the deposition to certify that the deponent was sworn according to law; by whom it was written; and whether or not the adverse party attended.   As none of these requirements appear in the certificate before us, the deposition cannot be

held to be certified as depositions taken in this state are certified. And the result is that the action of the Court in overruling the motion to suppress, must be held erroneous.

Another error is assigned. The Court, over the defendant's objection, admitted in evidence a certified copy of the will of *Daniel F. Courvoiser*, and what purports to be its probate, from the registry of the declaration of wills at *Paris*, in *France*. Against this ruling, the appellant relies upon a provision of the statute which relates to foreign wills, and which enacts that "such will, or a copy and the probate thereof, may be produced to the Court of Common Pleas of the county in which there is any estate on which the will may operate, and if the Court shall be satisfied that the instrument ought to be allowed, such Court shall order it to be filed and recorded, and thereupon, such will shall have the same effect as if it had been originally admitted to probate in this state." 2 R. S. p. 317, § 36. The words "shall have the same effect," &c., as used in this provision, evidently refer to a preceding section of the same statute, which authorizes a certified copy of a domestic will and its probate to be read in evidence without further proof. *Id.* p. 316, § 32. And, in view of the latter section, we have decided that a will, before it can be used in evidence, must have been admitted to probate, *Rogers* v. *Stevens*, 8 Ind. R. 465.

But it is insisted that the will in this case does not operate on any estate, and was, therefore, admissible without being filed and recorded in the Common Pleas. The position thus assumed is untenable. The will, it is true, does not pass the estate in controversy from *Benoit Courvoisier* to his daughter—the law of *Indiana* does that; but in the absence of the will, it could not be found that under its provisions he ever was entitled to an estate which could pass from him under the law of this state. Indeed, it constitutes the very first link in the plaintiff's chain of title, and, therefore, must be held to operate upon the estate in contest. In our opinion, the statute to which we have referred intends that a foreign will, or a copy and the probate thereof, shall not be used as evidence in the Courts of this state,

unless the same has been produced to the Common Pleas, May Term, and by that Court directed to be filed and recorded. It 1858. follows that the Court, in this instance, should have excluded the evidence.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*J. Sullivan* and *J. Dumont*, for the appellant.